IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

LARRY WHATLEY,                          §
                                        §
            Petitioner,                 §
                                        §
v.                                      §        Civil Action No. 4:16-CV-826-O
                                        §
LORIE DAVIS, Director,                  §
Texas Department of Criminal Justice,   §
Correctional Institutions Division,     §
                                        §
            Respondent.                 §

## OPINION AND ORDER

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed

by Petitioner, Larry Whatley, a state prisoner confined in the Correctional Institutions Division of

the Texas Department of Criminal Justice (TDCJ), against Lorie Davis, director of TDCJ,

Respondent. After considering the pleadings and relief sought by Petitioner, the Court has concluded

that the petition should be denied.

## I.  BACKGROUND

In January 2010 Petitioner was indicted in Tarrant County, Texas, Case No. 1183308, on one

count of aggravated assault with a deadly weapon, a knife. Clerk's R. 7, ECF No. 16-1. The

indictment included a repeat-offender notice. Following a mistrial, his retrial commenced on June

11, 2012. SHR02[1] 92, ECF No. 16-21. At the conclusion of the guilt/innocence phase, the jury

found Petitioner guilty as charged. Clerk's R. 148, ECF No. 16-1. On January 13, 2012, Petitioner

pleaded true to the repeat-offender notice and the jury assessed his punishment at 25 years'

confinement. *Id.* at 154. Petitioner's conviction was affirmed on appeal, and the Texas Court of

---

[1]"SHR02" refers to the record of Petitioner's state habeas proceeding in WR-82,536-02.

Criminal Appeals refused his petition for discretionary review. Mem. Op. 3, ECF No. 16-11.

Petitioner also challenged his conviction in two postconviction state habeas-corpus applications.

The first was dismissed on Petitioner's own motion and the second was denied by the Texas Court

of Criminal Appeals on the findings of the trial court.

The facts of the case were summarized by Petitioner's appellate counsel as follows:

The evidence of record established that Brooke Butler and [Petitioner] had been involved in an intimate relationship for about six years prior to December 11, 2009. Ms. Butler had apparently bought some type of sex toy which [Petitioner] had told her to throw away. [Petitioner] became enraged when he learned that Ms. Butler still had the sex toy and he yelled at her and slapped her. Ms. Butler fell to the floor and [Petitioner] pulled her up by her hair. As she started to walk downstairs to retrieve the sex toy, [Petitioner] kicked her which nearly caused her to fall down the stairs. He then hit her in her arms, stomach and vaginal area and kicked her in her back and hit her with a 5-gallon water bottle. When Ms. Butler was looking in a downstairs closet for the toy, [Petitioner] again pulled her by her hair, kicked and stomped her head and body. He also put a steak knife to her throat and caused a small puncture wound. After finding the sex toy, they both went back upstairs and had sexual intercourse. The next morning, [Petitioner] allowed Ms. Butler to dress and leave because she told him she had to go to work. Instead, she went to the house of a friend, Mandi Moore, who called for emergency assistance. Ms. Moore described the injuries she observed on Ms. Butler's body. Ms. Butler was transported to an emergency room for treatment. An emergency room nurse, Patrice Lucas, described Ms. Butler's injuries as multiple bruises and abrasions on the neck, sides and back, a broken finger, ruptured ear drums, black eyes, a ruptured tendon and a potentially life-threatening puncture wound to the neck near the carotid artery.

SHR02 76-77, ECF No. 16-21.

## II. ISSUES

In four grounds for relief, Petitioner claims that (1) he received ineffective assistance of trial

counsel; (2) the evidence was insufficient to support each element of the offense; (3) he received

ineffective assistance of appellate counsel; and (4) the trial court abused its discretion by denying

his motion for a mistrial. Pet. 6-7, ECF No. 3.

## III. RULE 5 STATEMENT

Respondent asserts that one or more of Petitioner's claims is unexhausted and/or procedurally barred from federal habeas review. Resp't's Answer 11-17, ECF No. 17. She does not otherwise believe that the petition is successive or barred by the federal statute of limitations. *Id.* at 5.

## IV. DISCUSSION

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d)(1)–(2); *Harrington v. Richter,* 562 U.S. 86, 100-01 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter*, 562 U.S. at 102. Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000).

In this case, the state habeas court entered findings of fact and conclusions of law relevant to Petitioner's claims and the Texas Court of Criminal Appeals adopted those findings in denying relief. Petitioner has failed to rebut the presumptive correctness of the state courts' factual findings

with clear and convincing evidence; thus, this Court applies the presumption of correctness to those findings, including the court's credibility findings, in considering Petitioner's claims. *See Richards v. Quarterman,* 566 F.3d 553, 563-64 (5th Cir. 2009); *Galvan v. Cockrell,* 293 F.3d 760, 764 (5th Cir. 2002).

### A. Ineffective Assistance of Counsel

Under his first ground, Petitioner raises six ineffective-assistance-of-trial-counsel claims. In his sixth such claim, Petitioner asserts that counsel was ineffective by failing to object to the trial court's affirmative deadly weapon finding. Respondent asserts that this claim, raised for the first time in this federal petition, is unexhausted and procedurally barred from federal habeas review. Resp't's Answer 11-14, ECF No. 17. State prisoners seeking habeas-corpus relief under § 2254 are required to exhaust all claims in state court before requesting federal habeas relief. 28 U.S.C. § 2254(b)(1); *Fisher v. Texas,* 169 F.3d 295, 302 (5th Cir. 1999). The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest court of the state, in this case the Texas Court of Criminal Appeals, on direct appeal or in state postconviction habeas-corpus proceedings. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-48 (1999); *Fisher*, 169 F.3d at 302; *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982). The exhaustion requirement is "not satisfied if the petitioner presents new legal theories or factual claims in his federal habeas petition." *Reed v. Stephens,* 739 F.3d 753, 780 (5th Cir. 2014) (quoting *Anderson v. Johnson,* 338 F.3d 382, 386 (5th Cir. 2003)).

Clearly, Petitioner's sixth ineffective-assistance claim, raised for the first time in this federal petition, is unexhausted for purposes of § 2254(b)(1)(A). Under the Texas abuse-of-the-writ doctrine, however, Petitioner cannot now return to state court for purposes of exhausting the claim. *See* TEX.

CODE CRIM. PROC. ANN. art. 11.07, § 4(a)-(c) (West 2015). The abuse-of-the-writ doctrine represents an adequate state procedural bar to federal habeas review. *See Smith v. Johnson*, 216 F.3d 521, 523-24 (5th Cir. 2000); *Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997).

Under limited circumstances, a petitioner may overcome a procedural bar and obtain federal habeas review of a claim by demonstrating an independent objective cause for the failure to properly raise the claim and actual prejudice resulting therefrom. *Coleman v. Thompson,* 501 U.S. 722, 759 (1991). Cause under the "cause and prejudice" standard must be an objective factor, external to the petitioner, that cannot be fairly attributed to him. *Id.* at 753; *Meanes v. Johnson,* 138 F.3d 1007, 1011 (5th Cir. 1999). The procedural bar may also be avoided if a petitioner can establish that a fundamental miscarriage of justice would result from application of the bar; however, this requires a statement and persuasive showing that he is actually innocent. *See House v. Bell,* 547 U.S. 518, 537 (2006); *Coleman,* 501 U.S. at 750. While Petitioner complains below about the sufficiency of the evidence presented in support of his conviction, he has not shown himself to be actually innocent of the crime for which he was convicted. Thus, it is necessary to address only the "cause and prejudice" exception.

In his state habeas application, Petitioner alleged that his appellate counsel was ineffective by failing to raise the "deficiencies of trial counsel" on appeal. SHR02 11, ECF No. 16-21. Although ineffective assistance of appellate counsel can serve as a potential cause to excuse a procedural default, it is well settled in Texas courts that initial collateral review normally is the preferred procedural route for raising ineffective-assistance-of-trial-counsel claims. *See Trevino v. Thaler,* 569 U.S. 413, 414-15 (2013). Thus, appellate counsel cannot be deemed ineffective by failing to raise the claim on direct appeal. Absent a showing of cause and prejudice, such showing not having been

demonstrated, Petitioner's sixth ineffective-assistance claim is unexhausted and procedurally barred from the Court's review.

In his remaining five claims, Petitioner claims, without further elaboration, that he received ineffective assistance of trial counsel due to counsel's failure to (1) object or move to quash the indictment; (2) investigate the facts of the case or call a defense witness with personal knowledge of the case; (3) preserve Confrontation Clause error; (4) request or motion for an instructed verdict; and (5) request a lesser-included-offense instruction. Pet. 6, ECF No. 3. Referring to Petitioner's state habeas application and supporting memorandum for more specificity, Petitioner asserts that counsel should have noticed upon inspection that the indictment failed to meet the criteria of article 21.02 of the Texas Code of Criminal Procedure, namely, that it was not properly presented to any court by the grand jury, does not state the term which the grand jury met, and does not bear the requisite signatures or clerk's filemark. SHR02 7, 24-27, ECF No. 16-21. He asserts counsel should have called as a defense witness Lisa Casillas, a friend of the victim's, who was aware of relevant information concerning the victim's mental problems and sexual relationships. *Id.* at 25-26. He asserts that counsel should have preserved Confrontation Clause error when the defense was prohibited from questioning Mandi Moore regarding the victim's other sexual relationships. *Id.* at 26. He also asserts counsel was ineffective by not requesting or moving for an instructed verdict at the close of the state's case because the prosecution did not produce two witnesses "to authorize conviction as required by" article 38.17 of the Texas Code of Criminal Procedure. *Id.* And, finally, he asserts that counsel should have requested a lesser-included-offense instruction but, in state court and now, he provides no further clarification. *Id.* at 27.

A criminal defendant has a constitutional right to the effective assistance of counsel at trial

and on a first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744 (1967). *See also Styron v. Johnson,* 262 F.3d 438, 450 (5th Cir. 2001) (applying the *Strickland* standard to ineffective-assistance claims against appellate counsel). An ineffective-assistance claim is governed by the familiar standard set forth in *Strickland v. Washington*. 466 U.S. at 668. To establish ineffective assistance of counsel under this standard, a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Id.* Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697. In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial or appellate strategy. *Id*. at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where a petitioner's ineffective-assistance-of-counsel claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of the *Strickland* standard in light of the state-court record. *Richter,* 562 U.S. at 100-01 (quoting *Williams v. Taylor,* 529 U.S. 362, 410 (2000)); *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). Thus, a federal court's review of state-court decisions regarding ineffective assistance of counsel must be "doubly deferential" so as to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow,* 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011)).

The state habeas court conducted a hearing by affidavit on Petitioner's claims. Based upon

trial counsel Brian Willett's affidavit in response to Petitioner's first state habeas application and the documentary record, the state court entered the following factual findings refuting Petitioner's allegations:

7. The Indictment was properly presented to the 432nd District Court grand jury, properly signed by the grand jury foreman, properly signed by the District Attorney, and file stamped by the Tarrant County District Clerk on January 15, 2010.

8. Hon. Willett requested, and was granted, funds for an investigator.

9. Wells Investigations conducted at least 4.5 hours of investigation in this case.

10. Lisa Casillas was interviewed by the defense team.

11. Hon. Willett did not call additional witnesses because the other witnesses' testimony had been impeached during the first trial and Hon. Willett concluded their testimony, and the inevitable impeachment, would not be beneficial in [Petitioner]'s second trial.

12. Some witnesses called during the first trial contradicted [Petitioner]'s version of what happened on the night of the offense and would not have been beneficial in [Petitioner]'s second trial.

13. Counsel's decision to not call the additional witnesses called during the first trial because they would be impeached, again, was the result of reasonable trial strategy.

14. Counsel's decision to not call [Petitioner]'s girlfriend, Lisa Casillas, after she was interviewed by the defense team because counsel determined, in his professional opinion, that the jury would just think she was "talcing up for" [Petitioner] was the result of reasonable trial strategy.

15. [Petitioner] presents no evidence to support his claim that counsel failed to investigate witnesses.

16. There is no evidence that the outcome of the proceeding would have been different had counsel investigated or called more witnesses.

17. The exchange regarding Ms. Moore's testimony went as follows:

MR. WILLETT: Well, at the time – at the time you kept referring to "he." Was Brooke involved with somebody else at that same time?

MR. FORAN: Objection. Not Relevant.

MR. WILLETT: Well, actually, it is, Your Honor. It's relevant as to whether or not it's him. It goes to impeach her testimony.

MR. FORAN: Well, actually, it's not relevant unless he can link it up, and he can't.

THE COURT: Come up, please.

(BENCH CONFERENCE PROCEEDINGS)

THE COURT: Can you link it up?

MR. WILLETT: Well, if she says yes, then obviously, it has time to come from her answer. If she says yes, then it's linked up because she just says there was somebody else involved. That's why I have to ask the question. I'm not following that – I have – I have someone who I think it is. But unless – I'm asking her the question if she knew it was somebody else. She's claiming it's my guy. She wasn't there. I'm asking if she had some other relationships. She's friends with her.

MR. FORAN: There's no evidence that anyone else beat her up.

THE COURT: What's that?

MR. FORAN: There's no evidence anyone else assaulted her.

MR. WILLETT: Well, there can't be any evidence because it's the woman. I'm trying to impeach her testimony, then I can ask if there's somebody else involved. I mean –

THE COURT: Do you have any information that could link her with somebody else who did it?

MR. WILLETT: Well, I have my client thinking there's somebody else that was involved with it.

MR. FORAN: Is he going to testify to that?

MR. WILLETT: He doesn't have to. I'm saying that's relevant if somebody else is involved with her, then that's relevant to whether or not it was my guy or not.

MR. FORAN: She probably knows a hundred people.

THE COURT: Where else are you going to go? Just ask –

MR WILLETT: I just want to ask. If she says no, that's the end of that. I don't have anything else to go with it. If she says yes, then that – the question asked about it was he – that she said Larry Whatley. She's referring to –

MR. FORAN: But that's information you elicited. You can't kick down your own door, then impeach her for extraneous.

MR. WILLETT: I didn't ask that. I didn't ask it, you did.

MR. FORAN: You –

THE COURT: I'll tell you what, I'm going to send the jury out.

(JURY NOT PRESENT)

THE COURT: Let the record reflect we're outside the presence of the jury. All right. Counsel, go ahead and ask the question.

MR. WILLETT: Your Honor, my question is I wanted to know if Ms. Moore knew of any other relationships Ms. Butler was involved with.

THE COURT: I'm sorry?

MR. WILLETT: Any other sexual relationships that Ms. Brooke was involved with.

THE COURT: You can answer.

MS. MOORE: I'd say at that time period, I'm not sure what situation she was in. I know during the time that I knew her, she was involved with other people from time to time. That time period, I don't know who she was involved with.

MR. WILLETT: And that's all I was going to ask. If she answers that, then obviously (unintelligible). But I think I should be able to ask the question.

THE COURT: And what issue does it go to?

MR. WILLETT: Because our theory is that he wasn't there, and it wasn't him, and there was somebody else that was involved with her, then that's relevant.

THE COURT: Do you have any evidence to show that there was someone else there? Is this a theory?

MR. WILLETT: I don't think I have to prove –

THE COURT: I mean, I'm just asking is this just a theory that you're plucking out of thin air, or do you have some evidence from somewhere that you're going to present on the issue.

MR. WILLETT: I don't have proof of it because there was only two people – well according to her, there was only two people that were there, and one of them is her. And of course, she's not saying that. If she's not telling the truth about it, she's not going to tell me that now. So I think I have the right to ask the question if there was any other relationships that it could have possibly been the person who was involved with this.

THE COURT: All right. Mr. Foran, any questions?

MR. FORAN: Well, I think it's improper character evidence. It's – there isn't a rational link to it. It's a fishing expedition, and I object.

THE COURT: Well, I'm going to sustain the objection at this point. If you can link it up some kind of way to an issue that's material and relevant to this case, you can recall the witness. But at this point, I'm going to sustain the witness.

MR. FORAN: And I want to make something clear earlier about when I asked about "he." That was in response to a question Mr. Willett asked the witness. He asked her about the time period and what she told him about the time period, and that's when she responded that "he came over," and "he was there." She didn't know how long he was there. I never asked her what Brooke told her about who assaulted her. That was on cross-examination.

THE COURT: All right. Let's bring the jury in.

(JURY PRESENT)

THE COURT: Be seated please. You may continue, Mr. Willett.

MR. WILLETT: Is it me? I have no further questions.

THE COURT: May this witness be excused?

MR. FORAN: Yes.

THE COURT: Subject to recall?

MR. WILLETT: Yes.

18.    When asked the question not allowed, the witness stated that she did not know whether the victim was involved with anyone else.

19.    There is no evidence that the witness held evidence that could have had a different outcome at trial.

20.    There is no evidence that a Confrontation Clause objection would have been sustained.

21.    There is no evidence that [Petitioner] was harmed by counsel not objecting on the basis of the Confrontation Clause.

22.    There is no evidence that [Petitioner] was harmed by trial court's denial of the testimony that the witness did not know if the victim was involved with anyone else.

23.    The victim testified about the assault as follows:

    a.    The victim had known [Petitioner] since 2003.
    b.    On December 11, 2009, the victim was sleeping in her home at around midnight when [Petitioner] came over.
    c.    [Petitioner] became upset with the victim and slapped her across her face so hard that she fell on the floor bleeding.
    d.    [Petitioner] hit her with a closed fist in her genitals.
    e.    [Petitioner] pulled the victim up from the floor by her hair and started hitting her in the arms and stomach.
    f.    As the victim walked down the stairs, [Petitioner] kicked her in the back.
    f.    The victim had to brace herself against the wall and grab the handrail to keep from falling down the stairs while [Petitioner] continued pushing her.

g.    [Petitioner] beat the victim with a five-gallon Ozarka water jug.

h.    [Petitioner] pulled the victim by her hair and put a steak knife to her neck.

I.    [Petitioner] pushed the victim to the floor and began kicking her sides and stomping on the right side of her face and on her ear.

j.    The victim heard ringing and popping sounds and even lost the ability to hear [Petitioner] yelling at her.

k.    [Petitioner] bit the victim on her inner thighs and genitals.

l.    After the assault, the victim's ears were still painfully ringing and her finger, face, sides, back, and every part of her body hurt.

24.    Because the victim's heart rate was so high, the technicians in the ambulance took her straight to Harris Methodist instead of Baylor or All Saints where she was admitted as a "level 1 trauma patient."

25.    As a result of [Petitioner]'s abuse, the victim suffered a puncture wound to her neck, and multiple scratches and abrasions to her head, legs, back, sides, and feet.

26.    The victim suffered a broken finger, which required a splint and months of therapy, a torn ligament, and a ruptured ear drum[s], which caused prolonged pain and nausea.

27.    The victim's testimony and the evidence of her injuries was sufficient evidence to support [Petitioner]'s conviction for aggravated assault with a deadly weapon, to-wit: a knife.

28.    There is a plausible basis in strategy for counsel's decision to not move for an instructed verdict because the evidence was sufficient to support [Petitioner]'s conviction.

29.    There is no evidence that a reasonable likelihood exists that the outcome of the proceeding would have been different had counsel moved for an instructed verdict.

30.    [Petitioner] does not allege what lesser included offense jury instruction should have been included in the court's charge.

31.    [Petitioner] does not allege what evidence in the record would have permitted a jury to rationally find that [Petitioner] was guilty only of a lesser offense.

32.    There is no evidence that counsel should have requested a lesser included jury instruction.

33.	This was a retrial after [Petitioner]'s first trial ended in a mistrial due to a hung jury.

34.	There is a plausible basis in strategy for counsel to not request a lesser included jury instruction and go for the "all or nothing" approach when one jury had already been unable to convict based on the State's evidence.

35.	There is no evidence that a reasonable likelihood exists that the outcome of the proceeding would have been different had counsel requested a lesser included offense instruction.

36.	Hon. Willett's affidavit is credible and supported by the record.

38.	There is no evidence that a reasonable likelihood exists that the outcome of the proceeding would have been different but for the alleged misconduct.

SH02 85-92, ECF No. 16-21 (record citations omitted).

Based on its findings, and applying the *Strickland* standard to the totality of counsel's representation, the state court concluded that Petitioner failed to prove that counsel was ineffective or that there existed a reasonable probability that, but for counsel's alleged acts of misconduct, the result of his trial would have been different. *Id.* at 96-99.

Relying on the presumptive correctness of the state courts' factual findings, and having independently reviewed Petitioner's claims in conjunction with the state court records, the state courts' application of *Strickland* was not objectively unreasonable. Petitioner's claims are largely conclusory, with no legal and/or evidentiary basis, involve matters of state law, involve strategic and tactical decisions made by counsel, or would have required counsel to make frivolous requests, motions, or objections, all of which generally do not entitle a state petitioner to federal habeas relief. *See, e.g., Strickland,* 460 U.S. at 689 (holding strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for postconviction relief on the grounds of ineffective assistance of counsel); *Johnson v. Cockrell,* 306 F.3d 249, 255 (5th Cir. 2002)

(concluding that counsel is not required to make futile motions or frivolous objections); *Green v. Johnson,* 160 F.3d 1029, 1037, 1042 (5th Cir. 1998) (providing "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue"); *United States v. Green,* 882 F.2d 999, 1003 (5th Cir. 1989) (providing "[a] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial").

Under his third ground, Petitioner claims his appellate counsel Kenneth R. Gordon was ineffective by failing to raise meritorious issues on appeal. Pet. 7, ECF No. 3. Specifically, he asserts counsel should have raised a sufficiency-of-the-evidence issue, the deadly-weapon issue, the lesser-included-offense issue, and the abuse-of-discretion issue. Appellate counsel also responded to Petitioner's allegations by affidavit, in relevant part, as follows (all spelling, grammatical, and/or punctuation errors are in the original):

> [Petitioner] alleges I was ineffective for the following reasons:
>
> 1. Failure to raise the issue of insufficient evidence on direct appeal;
> 2. Failure to raise ineffective assistance of counsel on direct appeal;
> 3. Failure to raise the issue of jury charge error on direct appeal;
> 4. Failure to raise the issue of abuse of discretion in the denial of his motion for mistrial; and
> 5. Raising and briefing a point of error which the Court of Appeals subsequently decided had not been preserved on direct appeal.
>
> **RESPONSE TO ALLEGATION NUMBER 1 (insufficient evidence):**
>
> A challenge to the sufficiency of the evidence under the standard announced in <u>Jackson v. Virginia</u>, is whether, after considering all of the evidence of record, including both direct and circumstantial evidence and all reasonable inferences that may be drawn from the evidence, in the light most favorable to the verdict, no rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. Deference is given to the factfinder to resolve any conflicts in the testimony, to weigh the evidence, and to draw

reasonable inferences from "basic facts to ultimate facts" and the presumption on appeal is that the factfinder resolved any conflicts in the evidence in favor of the verdict provided the resolution is rational. In this case, the State was required to establish beyond a reasonable doubt that [Petitioner] intentionally or knowingly caused bodily injury to Brooke Butler by punching her with his fist or pulling her down the stairs with his hand or stomping on her with his foot or hitting her with a 5-gallon water container and that, during the assault, he used or exhibited a knife as a deadly weapon. On November 19, 2012, I received a letter from [Petitioner] in which he asserted that "there was no knife or anything (sic) other evidence at either trial . . . so therefore the jury couldn't have found a knife." By the time I read his letter, I had had sufficient time to read the reporter's record and I responded with a letter explaining that I read some testimony tending to support the deadly weapon allegation. That letter was mailed on November 20, 2012. After a full review of the record, it was my professional opinion that there was sufficient evidence to sustain [Petitioner]'s conviction.

**RESPONSE TO ALLEGATION NUMBER 2 (ineffective assistance of trial counsel):**

An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking as to overcome the presumption that counsel's conduct was reasonable and professional. A defendant who believes he has received ineffective assistance of counsel at trial--whether his counsel is retained or appointed--may raise the complaint on direct appeal, which is his one appeal as of right. But both state and federal courts have said that direct appeal is an imperfect avenue for raising ineffective assistance of counsel claims. Rarely will the record on direct appeal contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation. In this case, which was a retrial after an earlier mistrial due to a hung jury, there was no indication that Mr. Brian Willett, the trial counsel, rendered the type of substandard or deficient professional legal assistance to the extent the fundamental fairness of the proceeding was adversely affected. There was nothing in my review of the record to cause me to question whether there was any reasonable probability that but for counsel's unprofessional errors the result of the trial would have been different.

**RESPONSE TO ALLEGATION NUMBER 3 (jury charge):**

[Petitioner] did not object to the court's charge nor did he request the inclusion of a charge concerning lesser-included offenses. I did not see any errors in the charge as given to the jury. I cannot surmise as to a trial counsel's strategy when one choice is just a reasonable as another one. I could not put forth a nonexistent issue as a point

of error.

**RESPONSE TO ALLEGATION NUMBER 4 (abuse of discretion):**

Detective R. L. Dunn testified that during his 18-year career with the Fort Worth Police Department he had started in street patrol but was currently a detective in both general assignments and family violence cases. He related his activities as the investigator assigned to this case including that he neither requested a crime scene unit go to the apartment nor did he conduct search, with or without a warrant, of the apartment. He stated that, in opinion, this was a "cut-and-dry" case in which he had a known suspect in custody along with photographs and the victim's statement and "a history of the subject". [Petitioner]'s objection was sustained, the trial court instructed the jury to disregard the "last statement", and denied [Petitioner]'s motion for mistrial. . . . The review of a trial court's denial of a motion for mistrial is under the abuse-of-discretion standard in which the evidence is viewed in the light most favorable to the trial court's ruling and that ruling is upheld if it falls within the zone of reasonable disagreement. A mistrial is a remedy intended for extreme circumstances, when prejudice is incurable and less drastic alternatives have been explored. In determining whether a prejudicial event was so harmful as to warrant reversal on appeal, consideration is given to the prejudicial effect, any curative measures taken, and the certainty of conviction absent the prejudicial event. When on direct or cross examination, a witness gives a non-responsive answer, a trial court errs in denying a motion for mistrial only in an "extreme case where the testimony was clearly calculated to inflame the minds of the jury to the point of rendering any curative instruction useless."

I did not believe the answers were so egregious or so harmful to [Petitioner]'s right to a fair trial as to warrant a mistrial. Because I did not believe the trial court abused its discretion in denying [Petitioner]'s motion for mistrial, I did not raise that issue on appeal.

**RESPONSE TO ALLEGATION NUMBER 5 (decision of the court of appeals):**

Based on the evidence of record and the established law of the various state and federal courts, I briefed what I believed to be the only viable point of error in this trial – that to the detriment of [Petitioner], the trial court terminated counsel's cross examination of Mandi Moore in an attempt to establish a viable defense. It was my opinion that the trial counsel was cross-examining the witness to ascertain whether another person with whom Ms. Butler was possibly having an affair could actually be responsible for the attack and that [Petitioner] was wrongfully accused. When [Petitioner] asked Ms. Moore whether she knew if Ms. Butler was involved with anyone else, the prosecutor objected as to relevancy. In a bench conference, the trial judge asked [Petitioner] whether he could link up the questioning and then sent the

jury out for a more detailed determination of the issue. [Petitioner] stated he was attempting to show that another person was the culprit and the trial judge asked whether he had any evidence to show there was another person. [Petitioner] responded that he did not but declared that he should have the opportunity to inquire into the knowledge of the witness. The state declared that [Petitioner] was on a "fishing expedition" and the trial court sustained the objection. [Petitioner] asked no further questions. Because I believed trial counsel was improperly prevented from establishing reasonable doubt and because I believed the trial court terminated counsel's cross examination to the detriment of [Petitioner], I briefed that as my point of error. I believed the issue was properly preserved. The court of appeals decided otherwise.

I deny that I provided [Petitioner] any substandard professional assistance in the preparation and presentation of his appeal.

SHR02 75-82, ECF No. 16-21 (citations omitted).

Based on counsel's affidavit and the documentary record, the state habeas court entered the following factual findings refuting Petitioner's allegations:

45.    Hon. Gordon did not allege that the evidence was insufficient on direct appeal because he concluded that the evidence was legally sufficient to sustain [Petitioner]'s conviction.

46.    Hon. Gordon's decision to not attack the sufficiency of the evidence on direct appeal was the result of reasonable appellate strategy.

47.    Hon. Gordon did not allege trial counsel was ineffective on direct appeal because the record on direct appeal did not indicate that trial counsel provided ineffective assistance of counsel.

48.    Hon. Gordon's decision to not allege that trial counsel was ineffective was the result of reasonable appellate strategy.

49.    Hon. Gordon did not raise any issue with the jury charge or failure to give a lesser included instruction because trial counsel did not object to the jury charge or request a lesser included instruction.

50.    Hon. Gordon's decision to not attack the jury charge or the failure of the trial court to give the jury a lesser included offense instruction was the result of reasonable appellate strategy.

. . .

52.   Hon. Gordon's decision to not allege the trial court erred in denying [Petitioner]'s motion for a mistrial was the result of reasonable appellate strategy.

53.   Based on the evidence in the record and the established law of various state and federal courts, Hon. Gordon concluded that the confrontation issue was the only viable issue on appeal.

54.   Hon. Gordon raised the issue that the trial court improperly limited the scope of [Petitioner]'s cross-examination because he concluded it was preserved.

55.   Hon. Gordon's decision to raise the issue of confrontation on direct appeal was the result of reasonable appellate strategy.

56.   There is no evidence as to how [Petitioner] was harmed by appellate counsel raising on direct appeal that [Petitioner] was denied his right to confrontation.

57.   There is no evidence that a reasonable likelihood exists that the outcome of the appellate proceeding would have been different had appellate counsel not raised the issue on direct appeal that [Petitioner] was denied his right to confrontation.

58.   There is no evidence that the outcome of the appellate proceeding would have been different but for the alleged misconduct.

*Id.* at 93-95 (record citations omitted).

Based on its findings, and applying the *Strickland* standard, the state court concluded that appellate counsel's choice of issue and decision not to raise Petitioner's claims on appeal was the result of reasonable appellate strategy. *Id.* at 100-20.

Deferring to the presumptive correctness of the state courts' factual findings, the state courts' application of *Strickland* was not objectively unreasonable. To prevail on a claim of ineffective assistance of counsel on appeal, a petitioner must make a showing that had counsel performed differently, he would have prevailed on appeal. *Sharp v. Puckett,* 930 F.2d 450, 453 (5th Cir. 1991)

(citing *Strickland,* 466 U.S. at 687). Appellate counsel is not required to urge every possible argument, regardless of merit. *Smith v. Robbins,* 528 U.S. 259, 288 (2000); *Sharp,* 930 F.2d at 452. It is counsel's duty to choose among potential issues, according to his judgment as to their merits and the tactical approach taken. *Jones v. Barnes,* 463 U.S. 745, 749 (1983). Contrary to his assertion, Petitioner fails to raise any meritorious claims in this petition. Prejudice does not result from appellate counsel's failure to assert meritless claims or arguments on appeal. *See United States v. Wilkes,* 20 F.3d 651, 653 (5th Cir. 1994).

### B. Sufficiency of the Evidence

Under his second ground, Petitioner claims that the evidence was insufficient to support each element of the indictment given that there was no evidence placing him at the crime scene; there was no investigation of the crime scene; no knife was identified or presented at trial; the injuries alleged in the indictment conflict with the injuries in the medical record; the state's medical expert did not treat the victim; and there was no evidence substantiating serious bodily injuries as alleged in the indictment. Pet. 6, ECF No. 3. Petitioner raised his sufficiency-of-the-evidence claim for the first time in his state habeas application. Respondent asserts that the claim is procedurally barred because the claim should have been, but was not, raised on direct appeal and is not cognizable on state habeas review. Resp't's Answer 14-16, ECF No. 17.

Under the procedural default doctrine, a federal court may not consider a state prisoner's federal habeas claim when the last state court to consider the claim expressly and unambiguously based its denial of relief on an independent and adequate state procedural default. *See Coleman v. Thompson,* 501 U.S. 722, 729, (1991); *Johnson v. Puckett,* 176 F.3d 809, 823 (5th Cir. 1999); *Fisher v. Texas,* 169 F.3d 295, 300 (5th Cir. 1999). "This doctrine ensures that federal courts give proper

respect to state procedural rules." *Glover v. Cain,* 128 F.3d 900, 902 (5th Cir. 1997). The state habeas court concluded that a sufficiency-of-the-evidence claim is not cognizable by way of postconviction collateral attack and addressed the claim only in the context of a "no" evidence claim, and the Texas Court of Criminal Appeals denied the claim without written order. *Id.* at 99.

Under Texas law, a sufficiency-of-the-evidence claim may only be raised on direct appeal and may not be raised in a state habeas proceeding. *West v. Johnson,* 92 F.3d 1385, 1389 n.18 (5th Cir. 1996); *Clark v. Texas* 788 F.2d 309, 310 (5th Cir. 1986); *Ex parte Grigsby,* 137 S.W.3d 673, 674 (Tex. Crim. App. 2004). When the Texas Court of Criminal Appeals is silent on its reasoning for denying a sufficiency-of-the-evidence claim raised for the first time on state habeas review, this Court may assume that the claim was denied because it is not cognizable on state habeas review. *Ex parte Grigsby,* 137 S.W.3d at 674. In these circumstances, reliance on the procedural default by the state court is established and presents an adequate state procedural ground barring federal habeas review. *Ylst v. Nunnemaker,* 501 U.S. 797, 801-07 (1991); *West v. Johnson,* 92 F>3d 1385, 1398 n.18 (5th Cir. 1996).

Petitioner alleges that his appellate counsel was ineffective for failing to raise a sufficiency-of-the-evidence claim on direct appeal. However, as discussed above, the record contains substantial evidence against Petitioner, sufficient to support the jury's verdict, and, thus, he fails to show that appellate counsel's failure to raise the issue constituted ineffective assistance. Absent such a showing, Petitioner's sufficiency-of-the-evidence claim is procedurally barred from this Court's review. *Coleman,* 501 U.S. at 750.

### C. Abuse of Discretion

Lastly, under his fourth ground, raised for the first time in Petitioner's state habeas

application, he claims that the trial court erred and abused it discretion by denying his motion for mistrial when a state's witness mentioned that Petitioner was a "known suspect." Pet. 7, ECF No. 3. Respondent asserts that this claim is also procedurally barred from federal habeas review because it could have been, but was not, raised on direct appeal. Resp't's Answer 16-17, ECF No. 17.

The Texas Court of Criminal Appeals has repeatedly held that claims that could have been raised on direct appeal, but were not, may not be raised in a state habeas application. *Ex parte Gardner,* 959 S.W.2d at 199-200. The state habeas court expressly found that the claim was forfeited as a result of Petitioner's failure to raise it on direct appeal. SHR02 102-03, ECF No. 16-21. The state court clearly relied upon a firmly established and regularly followed state procedural rule to deny the claim that, in turn, represents an adequate state procedural bar to federal habeas review. *Ex parte Gardner,* 959 S.W.2d at 199. *See also Ex parte Banks,* 769 S.W.2d 539, 540 (Tex. Crim. App. 1989) (holding "the Great Writ should not be used to litigate matters which should have been raised on appeal").

Petitioner alleges appellate counsel was ineffective by failing to raise the issue on appeal. However, as discussed above, counsel's decision not to raise the issue was reasonable appellate strategy. Therefore, Petitioner fails to show that appellate counsel's failure to raise the issue constituted ineffective assistance. Absent such a showing, Petitioner's claim is procedurally barred from this Court's review. *Coleman,* 501 U.S. at 750.

For the reasons discussed, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED. A certificate of appealability is also DENIED.

**SO ORDERED** on this 17th day of July, 2018.

Reed O'Connor
UNITED STATES DISTRICT JUDGE